## Case No. 8,345.

### LIGHTNER v. KIMBALL.

[1 Lowell, 211.] [1]

Circuit Court, D. Massachusetts. Feb., 1868.

TRESPASS—PARTIES DEFENDANT — PRINCIPAL AND AGENT.

A transportation company was organized for the purpose of providing a through line for freight between certain cities in the Eastern and others in the Western states, and contracted with the companies owning railroads between those cities to furnish cars for use throughout the line. The defendant was the general agent of the transportation company, with power to contract for the carriage of goods, but without power to say in what cars they should be carried, nor what axle boxes should be used on the cars. Axle boxes which infringed the plaintiff's patent were used on the cars in which the goods were so forwarded by the transportation company. *Held*, the defendant was not liable to an action as an infringer of the plaintiff's patent.

[Distinguished in American Cotton-Tie Supply Co. v. McCready. Case No. 295. Cited in United Nickel Co. v. Worthington, 13 Fed. 393.]

Case for damages for using the invention of the plaintiff [John Lightner], known as Lightner's axle boxes, for which he has a patent. It came before the court on an agreed statement of facts in which, for the purpose of ascertaining whether the defendant [Otis Kimball] is liable to an action, it was admitted that the patent is valid, and that axle boxes substantially like those described therein are used upon certain cars of the Red Line Transit Company, so called. A contract between certain railroad companies whose roads form a continuous line from Albany to Chicago, was put into the case, by which it appeared that those companies furnished freight cars in a certain proportion, and agreed to transport them upon certain terms, in order to establish a continuous daily line for freight between Chicago, as the western point, and Boston, Albany, and New York at the east. This contract contemplated the formation of a company or association to be composed of the presidents of the several contracting railroad corporations, and to be called the Red Line Transit Company, and this transit company purported to be the party of the second part to this contract, though it was signed only by the several railroad corporations. These corporations were to set apart certain cars, mark them, keep them in

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

repair, &c., and the transit company agreed to see that freight was obtained and a freight train made up of these cars or some of them, and despatched each way between the termini daily. The intention seemed to be to create a legal person authorized to contract for the conveyance of goods over the whole line, with power and responsibility to superintend the conveyance for the interest of all parties. What the organization of this new company in fact was, whether a partnership or a corporation, what its by-laws, officers, &c., was not stated. The case assumed that it had some proper organization, for it found that the defendant was appointed general manager of the company. It further found that the defendant contracts with merchants and others for the transportation of goods; that the railroad corporations furnished the cars, and that the defendant has nothing to do with the cars or their construction, selection, or repair, nor any authority to direct what axle boxes shall be used on the cars or removed therefrom, nor what particular cars of the whole number furnished by the several railroad corporations shall be used in transporting the goods for whose carriage he contracts. If upon this state of facts the defendant was not liable, judgment was to be entered for him; otherwise, the case was to stand for trial.

J. E. Maynadier, for plaintiff.
G. S. Hale, for defendant.

LOWELL, District Judge. The plaintiff contends that the transit company are the trustees or lessees of the cars, running them, or ordering them to be run, and having a special property therein which cannot be divested, even by the several railroad corporations which furnish them, until the expiration of the contract. If this be the proper construction of the contract, it may be true that the transit company are liable as infringers, but it does not follow that their agent for making contracts for transportation would be liable. It is a general rule that in actions of tort all the wrong-doers may be sued jointly or severally, and one cannot set up that he did the wrong by the command of another. Even this rule is not absolutely and universally true. A refusal by a servant to whom his master has intrusted goods, to deliver them to a stranger without the master's order, has been held not sufficient evidence of a conversion by the servant: Alexander v. Southey, 5 Barn. & Ald. 247; Mount v. Derick, 5 Hill, 455. So when the gist of the action is a breach of contract, although the form be tort, the defendant is entitled to the benefit of the same defenses that he would have had in the other form of action; and if he be a mere servant, he will not be liable, unless he can be held as a party to the contract: Williams v. Cranston, 2 Starkie, 82; Cavenagh v. Such, 1 Price, 328. So a mere bailee for a particular purpose, whose custody begins and ends

without notice of any defect of title, is sometimes exempted from suit: Greenway v. Fisher, 1 Car. & P. 190. But with comparatively few and unimportant exceptions, an agent or servant is equally liable with his master or principal to actions of trespass, trover, and even case for wrongs done to the property of a third person. See Perkins v. Smith, 1 Wils. 328; Stephens v. Elwall, 4 Maule & S. 259; Wilson v. Anderton, 1 Barn. & Adol. 450; Catterall v. Kenyon, 3 Q. B. 310; Wilson v. Peto, 6 Moore, 47.

It is said by an eminent judge that where the master has a color of right the servant is not bound to examine the justice of his title, but that the title must be litigated with the master: Berry v. Vantries, 12 Serg. & R. 92, citing Mires v. Solebay, 2 Mod. 242. There is much to be said in favor of this proposition as a matter of reasoning, but I have not found many cases which support it.

Granting, for the purposes of this argument, that every person who intermeddles with a patentee's property, that is, with his exclusive right to use his invention, is liable to an action at law for damages, this case does not show that the defendant does so intermeddle. He neither makes, uses, nor sells the invention, but is a mere stranger to the infringement, for it is agreed that he has no power or control over the matter. He is the agent of the transit company for making contracts for freight, but he does not appear to have any thing more to do with the use of the axle boxes than the several shippers who contract with him. If all merchants who ship goods by these cars, should refuse to do so until the axle boxes were changed or licensed, it might be a very good thing for the plaintiff, but they are under no obligation to do so. Nor is the defendant bound to know what axle boxes his principals use, or to refuse to be their freight agent until they obtain a license to use them. His defence is not that he is the servant of the transit company in doing the wrong, but that he is a stranger to the wrong done. If the servant were liable for acts of the master, instead of the reverse, there might be some ground for holding this defendant responsible for the use of the axle boxes by his principals; but the case finds that he has neither the property, the custody, nor the control of the cars in which this contrivance is used, that he can neither command the use nor the discontinuance of it, and that his duties have relation to an entirely distinct subject-matter. If the plaintiff were the owner of these axle boxes, which is a supposition more favorable to him than the fact, it is plain that he could maintain neither trespass nor any other action concerning them against the defendant: and that a demand on the defendant would be no evidence of a conversion, because he is not in a situation either to yield to or refuse such a demand.

The case of Lightner v. Brooks [Case No. 8,344], decided by the presiding judge of this court in 1864, is much in point. There the

present plaintiff sued a director of a railroad company; and the court held that in the absence of evidence that the defendant had used or directed the use of the invention, he was not liable. Whether the general agent or superintendent of the company might be sued was not decided. Here it is not only shown that the defendant did not command the use of the invention by the transit company, but that he had no authority so to do. The fact that he is called a general manager is unimportant, because the agreed facts show what his powers were, and that he was not a manager in respect to the infringement. I do not find it necessary to decide whether the transit company or only the several railroad companies would be liable; nor whether in equity, where the controversy is expected to be settled in one suit, and between the parties really claiming adverse rights, a servant is ever a proper party; nor, indeed, what the precise limits are to the right to sue at law, but only that the facts here do not show that this defendant has infringed the plaintiff's exclusive rights. Judgment for the defendant.

[The infringement of the same patent was the subject of the action in Case No. 8,344.]